## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x

*In re:*                                                          :        **Chapter 11**
                                                                 :
**AAC HOLDINGS, INC.,**  *et al.,*                                :        **Case No. 20–11648 (JTD)**
                                                                 :
                                                                 :
        **Debtors.**[1]                                          :        **(Jointly Administered)**
                                                                 :        **Re: Docket Nos. 4, 65**

------------------------------------------------------------- x

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) AUTHORIZING DEBTORS TO OBTAIN SENIOR SECURED PRIMING SUPERPRIORITY POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Recovery First of Florida, LLC (3005); Fitrx, LLC (5410); Oxford Treatment Center, LLC (7853); Oxford Outpatient Center, LLC (0237); Concorde Treatment Center, LLC (6483); New Jersey Addiction Treatment Center, LLC (7108); ABTTC, LLC (7601); Laguna Treatment Hospital, LLC (0830); AAC Las Vegas Outpatient Center, LLC (5381); Greenhouse Treatment Center, LLC (4402); AAC Dallas Outpatient Center, LLC (6827); Forterus Health Care Services, Inc. (4758); Solutions Treatment Center, LLC (8175); San Diego Addiction Treatment Center, Inc. (1719); River Oaks Treatment Center, LLC (0640); Singer Island Recovery Center LLC (3015); B&B Holdings Intl LLC (8549); The Academy Real Estate, LLC (9789); BHR Oxford Real Estate, LLC (0023); Concorde Real Estate, LLC (7890); BHR Greenhouse Real Estate, LLC (4295); BHR Ringwood Real Estate, LLC (0565); BHR Aliso Viejo Real Estate, LLC (2910); Behavioral Healthcare Realty, LLC (2055); Clinical Revenue Management Services, LLC (8103); Recovery Brands, LLC (8920); Referral Solutions Group, LLC (7817); Taj Media LLC (7047); Sober Media Group, LLC (4655); American Addiction Centers, Inc. (3320); Tower Hill Realty, Inc. (0039); Lincoln Catharine Realty Corporation (5998); AdCare Rhode Island, Inc. (2188); Green Hill Realty Corporation (4951); AdCare Hospital of Worcester, Inc. (3042); Diversified Healthcare Strategies, Inc. (3809); AdCare Criminal Justice Services, Inc. (1653); AdCare, Inc. (7005); Sagenex Diagnostics Laboratory, LLC (7900); RI - Clinical Services, LLC (6291); Addiction Labs of America, LLC (1133); AAC Healthcare Network, Inc. (0677); AAC Holdings, Inc. (6142); San Diego Professional Group, P.C. (9334). Grand Prairie Professional Group, P.A. (2102); Palm Beach Professional Group, Professional Corporation (7608); Pontchartrain Medical Group, A Professional Corporation (1271); Oxford Professional Group, P.C. (8234); and Las Vegas Professional Group - Calarco, P.C. (5901). The location of the Debtors' corporate headquarters is 200 Powell Place, Brentwood, TN 37027.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the applicable DIP Loan Documents (as defined herein).

the "Chapter 11 Cases"), seeking entry of the Interim Order (as defined below) and this final

order (together with all annexes, schedules and exhibits hereto, this "Final Order"), pursuant to

sections 105, 361, 362, 363(b), 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503,

506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy

Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2, 9006-1 and 9013-1 of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"):

(1)      authorizing the Debtors to obtain a multi-draw superpriority senior secured priming debtor-in-possession term loan credit facility (the "DIP Facility", and the term loans thereunder, the "DIP Loans"), in an aggregate principal amount of up to $62,500,000, pursuant to the terms and conditions of this Final Order and that certain Senior Secured Super-priority Debtor-In-Possession Credit Agreement, dated as of June 25, 2020 and attached hereto as **Exhibit A** (as amended, supplemented, restated or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement", and together with all agreements, documents, instruments and certificates executed, delivered or filed in connection therewith, as amended, supplemented, restated or otherwise modified from time to time in accordance with the terms thereof, collectively, the "DIP Loan Documents"), by and among AAC Holdings, Inc., as Borrower ("AAC"), each of the other Debtors, as guarantors, Ankura Trust Company, LLC ("Ankura"), as administrative agent (in such capacity, the "DIP Administrative Agent") and collateral agent (in such capacity, the "DIP Collateral Agent", and together with the DIP Administrative Agent, collectively, the "DIP Agent"), the lenders party to the DIP Credit Agreement as of the Closing Date (as defined in the DIP Credit Agreement) (the "Initial DIP Lenders") and such other lenders, if any, that become lenders under the DIP Facility in accordance with and subject to the DIP Loan Documents and this Final Order (such lenders, together with the Initial DIP Lenders, the "DIP Lenders", and together with the DIP Agent, the "DIP Secured Parties");

(2)      authorizing the Debtors to execute, deliver to the DIP Secured Parties, and perform under the DIP Credit Agreement and the other DIP Loan Documents and to perform such other and further acts as may be necessary or desirable in connection with the DIP Loan Documents (including, without limitation, the releases set forth in Section 9.24 of the DIP Credit Agreement provided by the Releasing Parties (as defined in the DIP Credit Agreement) in favor of the Lender Parties (as defined in the DIP Credit Agreement));

(3)      authorizing and directing the Debtors to incur and pay all DIP Obligations (as defined below);

(4)    granting to the DIP Collateral Agent for the benefit of itself and the other DIP Secured Parties, and authorizing the Debtors to incur, valid, enforceable, non-avoidable, automatically and fully perfected priming liens on and security interests in all DIP Collateral (as defined below), including, without limitation, all Cash Collateral (as defined below), to secure the DIP Obligations, which liens and security interests shall be subject to the rankings and priorities set forth herein;

(5)    granting to the DIP Secured Parties allowed superpriority administrative expense claims against each of the Debtors, on a joint and several basis, in respect of all DIP Obligations, as set forth herein;

(6)    authorizing the Debtors' use of the proceeds of the DIP Facility and Cash Collateral, in each case solely in accordance with the Approved Budget (as defined below), and subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents;

(7)    providing adequate protection, as and to the extent set forth herein, to the holders of Prepetition Senior Lien Obligations and Prepetition Junior Lien Obligations (as defined below) for any Diminution in Value (as defined below) of their interests in the Prepetition Collateral (as defined below), including Cash Collateral;

(8)    approving certain stipulations by the Debtors with respect to Prepetition Credit Agreements, Prepetition Obligations and Prepetition Collateral; and

(9)    modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code or otherwise to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the DIP Loan Documents, and waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order and the DIP Loan Documents, and providing for the immediate effectiveness of this Final Order and the DIP Loan Documents.

The Court (as defined below) having considered the Motion, the DIP Loan Documents on file with the Court, the Declaration of J. Jette Campbell, Chief Restructuring Officer, in Support of Chapter 11 Petitions and First Day Motions and any exhibits thereto (the "First Day Declaration"), the Declaration of Charles Edelman in support of the Motion (the "DIP Declaration"), the pleadings filed with the Court, and the evidence proffered or adduced at the interim hearing held on June 23, 2020 (the "Interim Hearing") and the hearing held before this Court on July 16, 2020 (the "Final Hearing"); and notice of the Interim Hearing and the Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Rules and the Interim Order with respect to the Final Hearing; the Court having

3

entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Authorizing Debtors to Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* on June 23, 2020 [Docket No. 65] (the "Interim Order"); and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the final relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, represents a sound exercise of the Debtors' business judgment and is necessary for the continued operation of the Debtors' businesses; and upon the record of these Chapter 11 Cases; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED:[3]

A.      *Petition Date*.  On June 20, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Chapter 11 Cases.

B.      *Debtors-in-Possession*.   The Debtors continue to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      *Committee Formation*.  On July 2, 2020, the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code (the "Official Committee").

---

[3] Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D.    *Jurisdiction and Venue*.  The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected thereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2) and 1334. The statutory predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506 and 507 of the Bankruptcy Code and Rules 2002, 4001, 6003, 6004 and 9014 of the Bankruptcy Rules.  Venue for these Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    *Debtors' Stipulations*.  In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility, and in exchange for and in recognition of the priming of the Prepetition Liens (as defined below), subject to paragraph 30 hereof, the Debtors hereby admit, stipulate, acknowledge and agree that:

(i)    *Prepetition Senior Lien Facility*. Pursuant to the Credit Agreement, dated as of March 8, 2019 (as amended, supplemented, restated or otherwise modified from time to time prior to, and as in effect on, the Petition Date, the "Prepetition Senior Lien Credit Agreement", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, including that certain Prepetition Intercreditor Agreement (as defined below) and that certain Forbearance Agreement dated as of October 30, 2019 (as amended, supplemented or otherwise modified from time to time) among the Senior Lien Loan Parties (as defined below), the lenders constituting Required Lenders under the Prepetition Senior Lien Credit Agreement party thereto and the Senior Agent (as defined below), collectively, the "Senior Lien Loan Documents") by and among AAC, as borrower (the "Senior Lien Borrower"), the guarantors party thereto (the "Senior Lien Guarantors", and together with the Senior Lien Borrower, the "Senior Lien Loan Parties"), the lenders party thereto (collectively, the "Senior Lenders") and Ankura (as successor by assignment to Credit Suisse AG), as administrative agent (in such capacity, the "Senior Administrative Agent") and collateral agent (in such capacity, the "Senior Collateral Agent", and together with the Senior Administrative Agent, collectively, the "Senior Agent"), the Senior Lenders provided a credit facility (the "Prepetition Senior Lien Facility") to the Senior Lien Borrower.

(ii)    *Prepetition Senior Lien Obligations*. As of the Petition Date, without defense, counterclaim, or offset of any kind, the Senior Lien Loan Parties were jointly and severally indebted to the Senior Lenders and the Senior Agent in the aggregate principal amount of $47,000,000, *plus* accrued but unpaid interest, *plus* any other amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Senior Lien Loan Documents, including, without limitation, principal, accrued and unpaid interest (including at the default rate), premiums, makewholes, any reimbursement obligations (contingent or otherwise), exit

5

payments, any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements of the Senior Lenders and the Senior Agent), outstanding letters of credit, indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect thereof, in each case, to the extent provided in the Senior Lien Loan Documents (collectively, the "Prepetition Senior Lien Obligations").

(iii)    *Prepetition Senior Lien Collateral*.  To secure the Prepetition Senior Lien Obligations, the Senior Lien Loan Parties granted to the Senior Collateral Agent, for the benefit of itself and the Senior Lenders and the Senior Administrative Agent, properly perfected continuing liens, mortgages and security interests (collectively, the "Prepetition Senior Facility Liens") in all "Collateral" as defined in the Prepetition Senior Lien Credit Agreement (collectively, the "Prepetition Senior Lien Collateral").

(iv)    *Prepetition Junior Lien Facility*. Pursuant to the Credit Agreement, dated as of June 30, 2017 (as amended, supplemented, restated or otherwise modified from time to time prior to, and as in effect on, the Petition Date, the "Prepetition Junior Lien Credit Agreement", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, that certain Prepetition Intercreditor Agreement and that certain Forbearance Agreement dated as of October 30, 2019 (as amended, supplemented or otherwise modified from time to time) among the Junior Lien Loan Parties (as defined below), the lenders constituting Required Lenders under the Prepetition Junior Lien Credit Agreement party thereto and the Junior Agent (as defined below), collectively, the "Junior Lien Loan Documents", and together with the Senior Lien Loan Documents, the "Prepetition Loan Documents") by and among AAC, as borrower (the "Junior Lien Borrower"), the guarantors party thereto (the "Junior Lien Guarantors", and together with the Junior Lien Borrower, the "Junior Lien Loan Parties", and together with the Senior Lien Loan Parties, the "Prepetition Loan Parties"), the lenders party thereto (collectively, the "Junior Lenders", and together with the Senior Lenders, the "Prepetition Lenders") and Ankura (as successor by assignment to Credit Suisse AG), as administrative agent (in such capacity, the "Junior Administrative Agent") and collateral agent (in such capacity, the "Junior Collateral Agent", and together with the Junior Administrative Agent, collectively, the "Junior Agent", and together with the Senior Agent, the "Prepetition Agents", and together with the Prepetition Lenders, the "Prepetition Secured Parties"), the Junior Lenders provided a credit facility (the "Prepetition Junior Lien Facility") to the Junior Lien Borrower.

(v)    *Prepetition Junior Lien Obligations*.  As of the Petition Date, without defense, counterclaim, or offset of any kind, the Junior Lien Loan Parties were jointly and severally indebted to the Junior Lenders and the Junior Agent in the aggregate principal amount of $316,612,692.97, *plus* accrued but unpaid interest, *plus* any other amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Junior Lien Loan Documents, including, without limitation, principal, accrued and unpaid interest (including at the default rate), premiums, makewholes, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements of the Junior Lenders and the Junior Agent), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in

respect thereof, in each case, to the extent provided in the Junior Lien Loan Documents (collectively, the "Prepetition Junior Lien Obligations", and together with the Prepetition Senior Lien Obligations, the "Prepetition Obligations").

(vi)    *Prepetition Junior Lien Collateral*.  To secure the Prepetition Junior Lien Obligations, the Junior Lien Loan Parties granted to the Junior Collateral Agent, for the benefit of itself and the Junior Lenders and the Junior Administrative Agent, properly perfected continuing liens, mortgages and security interests (collectively, the "Prepetition Junior Facility Liens", and together with the Prepetition Senior Facility Liens, the "Prepetition Liens") in all "Collateral" as defined in the Prepetition Junior Lien Credit Agreement (collectively, the "Prepetition Junior Lien Collateral", and together with the Prepetition Senior Lien Collateral, the "Prepetition Collateral").

(vii)    *Validity and Enforceability of Prepetition Liens and Prepetition Obligations*.  (a) The Prepetition Liens are valid, binding, enforceable, non-avoidable and perfected liens, with priority over any and all other liens (other than liens expressly permitted to be senior to all Prepetition Liens under the Prepetition Senior Lien Credit Agreement and the Prepetition Junior Lien Credit Agreement (collectively, the "Prepetition Credit Agreements"), solely to the extent such permitted liens were existing, valid, enforceable, properly perfected and non-avoidable as of the Petition Date or that are perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code (the "Permitted Prior Senior Liens"), subject to the terms of the Prepetition Intercreditor Agreement); (b) the Prepetition Senior Lien Obligations constitute legal, valid, binding and non-avoidable obligations of the Senior Lien Loan Parties, enforceable in accordance with the terms of the Senior Lien Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); (c) the Prepetition Junior Lien Obligations constitute legal, valid, binding and non-avoidable obligations of the Junior Lien Loan Parties, enforceable in accordance with the terms of the Junior Lien Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (d) subject to paragraph 30 hereof, the Debtors and their estates hold no (and hereby waive, discharge and release any) valid or enforceable claims (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights of any kind, and waive, discharge and release any right they may have to (A) challenge the amount, validity, enforceability, priority, security and perfection of any of the Prepetition Obligations, the Prepetition Loan Documents or the Prepetition Liens, respectively, and (B) assert any and all claims (as defined in the Bankruptcy Code) or causes of action against the Prepetition Agents or the Prepetition Lenders, and each of their respective officers, directors, equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives (collectively, the "Prepetition Lender Parties"), whether arising at law or in equity, including any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, in each case, arising out of, based upon or related to the Prepetition Loan Documents, the Prepetition Liens or the Prepetition Obligations, as applicable.

(viii)    *Prepetition Intercreditor Agreement*.  The relative rights and remedies of the Prepetition Secured Parties and the relative priority of their respective security interests in

any shared or common Prepetition Collateral are governed by that certain Intercreditor Agreement dated as of March 8, 2019 (as amended, supplemented or otherwise modified from time to time) by and among the Debtors, the Senior Lien Agent and the Junior Lien Agent (the "Prepetition Intercreditor Agreement").

(ix)    *Cash Collateral*.  All of the Debtors' cash, whether existing on the Petition Date or thereafter, wherever located (including, without limitation, any cash in deposit accounts of the Debtors or otherwise), whether as original collateral or proceeds of other Prepetition Collateral, constitutes cash collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

(x)    *Control*.  None of the Prepetition Lender Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders of the Debtors or any of their affiliates by virtue of the actions taken with respect to, in connection with, related to or arising from the Prepetition Credit Agreements.

(xi)    *Default*.  The Prepetition Loan Parties were in default of certain terms and provisions of the Prepetition Loan Documents prior to the Petition Date, and remain in default as of the Petition Date.

F.    *Findings Regarding Postpetition Financing*.

(i)    *Request for Postpetition Financing.*  The Debtors have sought authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, and (b) use Cash Collateral on the terms described herein and in the DIP Loan Documents in order to administer the Chapter 11 Cases and fund the operation of their businesses.  The Debtors have also sought final approval of the DIP Loan Documents, the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to this Final Order, and notice of the Final Hearing and Final Order have been provided in accordance with the Interim Order.  Good cause has been shown for the entry of this Final Order.

(ii)    *Priming of Prepetition Liens.*  The priming of the Prepetition Senior Facility Liens on the Prepetition Senior Lien Collateral and the Prepetition Junior Facility Liens on the Prepetition Junior Lien Collateral under section 364(d)(1) of the Bankruptcy Code, as contemplated by this Final Order and the DIP Facility and as further described below, will enable

the Debtors to obtain the DIP Facility and, among other benefits, to continue to operate their businesses for the benefit of their estates and stakeholders.  The Senior Agent, on behalf of the Senior Lenders, and the Junior Agent, on behalf of the Junior Lenders, consent to the priming of the Prepetition Senior Facility Liens and the Prepetition Junior Facility Liens, as applicable, and have no objection to the adequate protection thereof as provided in this Final Order.

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.*    The Debtors' need to use Cash Collateral on a final basis and to obtain credit pursuant to the DIP Facility as provided for herein on a final basis is necessary to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to maintain business relationships with their vendors, suppliers, doctors and patients, pay their employees and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral.  Without the ability to access the full amount available under the DIP Facility and the authority to use Cash Collateral, the Debtors, their estates and their creditors would suffer immediate and irreparable harm, and the Debtors' chances for a successful exit and reorganization from the Chapter 11 Cases would be jeopardized.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.  The terms of the DIP Facility and the DIP Loan Documents are fair and reasonable and reflect the Debtors' exercise of sound business judgment and are supported by reasonably equivalent value and fair consideration.

(iv)    *No Credit Available on More Favorable Terms.*    Given their current financial condition, financing arrangements and capital structure, the Debtors have been unable

to obtain financing from sources other than the DIP Lenders on terms more favorable than those provided under the DIP Facility and the DIP Loan Documents. The Debtors have been unable to obtain sufficient unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors also have been unable to obtain sufficient credit (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Postpetition financing is not otherwise available without granting the DIP Collateral Agent, for the benefit of itself and the other DIP Secured Parties: (1) the DIP Liens (as defined below) on all DIP Collateral, as set forth herein; (2) the Superpriority DIP Claims (as defined below); and (3) the other protections set forth in this Final Order. After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time, and is in the best interests of all of their stakeholders.

(v)      *Use of Proceeds of the DIP Facility and Cash Collateral.* As a condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral (including, without limitation, the proceeds of the DIP Facility), the DIP Agent and the DIP Lenders require, and the Debtors have agreed, that Cash Collateral and the proceeds of the DIP Facility shall be used only in a manner consistent with the terms and conditions of the DIP Loan Documents and this Final Order, and solely in accordance with the Approved Budget.

G.      *Adequate Protection*. The Prepetition Lenders have consented (or are deemed to have consented pursuant to the Prepetition Intercreditor Agreement) to the subordination of their

Prepetition Liens to the DIP Liens, and the Prepetition Lenders have agreed to permit the Debtors' use of Prepetition Collateral (including Cash Collateral), in each case, in accordance with and subject to the terms hereof, the Approved Budget and the DIP Loan Documents. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to adequate protection against the diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral) resulting from, among other things, (a) the use, sale or lease by the Debtors (or other decline in value) of the Prepetition Collateral (including Cash Collateral), (b) the imposition of the Carve-Out (as defined below) and the DIP Liens and the priming of the Prepetition Liens, and (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "Diminution in Value"), as and to the extent set forth herein.

H.      *Sections 506(c) and 552(b)*.  As a material inducement to the DIP Lenders to agree to provide the DIP Facility, and in exchange for (a) the DIP Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out to the extent set forth herein, and (b) the Prepetition Agents' and the Prepetition Lenders' agreement to (i) subordinate their Prepetition Liens and the Adequate Protection Liens (defined below) to the DIP Liens, the Superpriority DIP Claims and the Carve-Out, and (ii) consent to the use of Cash Collateral in accordance with and subject to the Approved Budget, the DIP Loan Documents, the Interim Order and the terms of this Final Order, each of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties are entitled to receive (1) a waiver of any "equities of the case" exceptions under section 552(b) of the Bankruptcy Code, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.    *Good Faith of the DIP Agent and the DIP Lenders*.

(i)    *Willingness to Provide Financing*.    The DIP Lenders have indicated a willingness to provide postpetition financing to the Debtors subject to, among other things: (a) the entry by the Court of the Interim Order and this Final Order; (b) approval by the Court of the terms and conditions of the DIP Facility and the DIP Loan Documents; and (c) entry of findings by the Court that such financing is essential to the Debtors' estates, that the DIP Agent and the DIP Lenders are extending postpetition credit to the Debtors pursuant to the DIP Loan Documents, the Interim Order and this Final Order in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to the Interim Order and this Final Order and the DIP Loan Documents will have the benefits and protections provided in section 364(e) of the Bankruptcy Code in the event the Interim Order or this Final Order is reversed or modified on appeal.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.    The terms and conditions of the DIP Facility, including the extension of credit, the fees and other amounts paid and to be paid thereunder, and the Cash Collateral arrangements described therein and herein:   (a) are fair and reasonable; (b) are the best available to the Debtors under the circumstances; (c) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (d) are supported by reasonably equivalent value and fair consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties.  The credit to be extended under the DIP Facility shall be deemed to have been so advanced, made, used and/or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP

Lenders are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

J.      *Notice*.  Notice of the Final Hearing and the final relief requested in the Motion has been provided by the Debtors, whether by email, facsimile, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors; (v) counsel to the ad hoc committee of certain Senior Lenders and Junior Lenders (the "Ad Hoc Committee") and the Initial DIP Lenders; (vi) counsel to the Prepetition Agents and the DIP Agent; (vii) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (viii) all financial institutions at which the Debtors maintain deposit accounts; (ix) the landlords for all non-residential real properties occupied by the Debtors as of the Petition Date; and (x) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice prior to the date hereof.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is appropriate under the circumstances to permit the final relief set forth in this Final Order and complies with Bankruptcy Rule 2002 and 4001(c) and Local Rules 2002-1, 4001-2 and 9013-1(m).

K.      *Relief Essential*.  The Court concludes that entry of this Final Order is in the best interest of the Debtors' estates and creditors, and is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their assets and properties.

NOW THEREFORE, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, the DIP Declaration and the record made before the Court with respect to

the Motion at the Interim Hearing, the Final Hearing and otherwise, and after due consideration, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, THAT:

1.      <u>Motion Approved</u>.  The Motion is hereby granted on a final basis, on the terms and conditions set forth in this Final Order and the DIP Loan Documents.  All objections to the relief sought in the Motion or to the entry of this Final Order, to the extent not withdrawn or resolved, and all reservation of rights included therein, are hereby overruled.

2.      <u>Authorization of the DIP Facility</u>.

(a)      The DIP Facility is hereby approved on a final basis.  The Debtors were, by the Interim Order, and hereby are on a final basis expressly and immediately authorized and empowered (a) to establish the DIP Facility, (b) to execute, deliver and perform under the DIP Loan Documents, and to borrow, incur, guarantee (as applicable), perform and pay the DIP Obligations and create and grant the DIP Liens in the DIP Collateral in favor of the DIP Collateral Agent for the benefit of the DIP Secured Parties, in each case, in accordance with and subject to the terms of this Final Order, the Approved Budget and the DIP Loan Documents, (c) to execute, deliver and perform under any and all other instruments, certificates, agreements and documents which may be requested by the DIP Agent or the Initial DIP Lenders, and (d) to take any and all other actions, which may be required, necessary or prudent for the performance by the applicable Debtors under the DIP Facility or the DIP Loan Documents, the creation and perfection of the DIP Liens or to implement any of the transactions contemplated by the DIP Loan Documents or this Final Order.  Without limiting the foregoing, the Debtors were, by the Interim Order, and hereby are authorized and directed, on a final basis, to pay, in accordance with this Final Order, all DIP Obligations, which amounts are hereby approved, shall not be

subject to further approval of this Court and shall be non-refundable and not subject to challenge in any respect. Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates, and the DIP Obligations shall be due and payable, in each case, in accordance with the terms of the Interim Order, this Final Order and the DIP Loan Documents.

(b) For purposes hereof, the term "DIP Obligations" as used herein means all "Obligations" as defined in the DIP Credit Agreement, and shall include, without limitation, principal, interest, fees, fees and other amounts under the DIP Commitment Letter, original issue discount, costs, expenses, charges, prepayment premiums or similar amounts, any obligations in respect of indemnity claims, whether contingent or absolute, due under the DIP Loan Documents and any other amounts that are or may become due under the DIP Loan Documents, in each case, whether or not such fees arose before or after the Petition Date, as such amounts become earned, due and payable under the DIP Loan Documents, without the need to obtain further Court approval. The Debtors, the DIP Agent and the DIP Lenders were, by the Interim Order, and hereby are expressly authorized and empowered, on a final basis, to take all actions determined by the DIP Agent and the Initial DIP Lenders to be reasonably necessary or advisable to syndicate the DIP Facility to the extent contemplated in the DIP Loan Documents (and neither the Initial DIP Lenders nor the DIP Agent (nor their respective professionals) shall be liable to any person or entity with respect to any act taken or omitted from being taken in connection with such syndication.

3. <u>Authorization to Borrow</u>. The Debtors are hereby authorized to borrow DIP Loans from the DIP Lenders under the DIP Facility (and the DIP Guarantors are hereby authorized to unconditionally guarantee, on a joint and several basis, the repayment of the DIP

Facility), subject to the terms and conditions set forth in this Final Order and the DIP Loan Documents.  The DIP Lenders shall have no obligation to make any loan or advance under the DIP Loan Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents and this Final Order have been satisfied in full or waived in accordance with the DIP Loan Documents.

4.    <u>DIP Obligations</u>.    The Interim Order, this Final Order and the DIP Loan Documents shall evidence the DIP Obligations, which DIP Obligations shall, upon execution of the DIP Loan Documents, be valid, binding and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (which, for the avoidance of doubt, shall not include any bankruptcy cases commenced by any of the Debtors subsequent to the conclusion of the Chapter 11 Cases), and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "<u>Successor Cases</u>"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Final Order and the DIP Loan Documents.  All obligations incurred, payments made, and transfers or grants of security and liens set forth in the Interim Order, this Final Order and/or the DIP Loan Documents by any Debtor are granted to or for the benefit of the Debtors for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of security or lien hereunder and/or under the DIP Loan Documents (including any DIP Obligation or DIP Liens) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or

under any applicable law (including, without limitation, under sections 502(d), 544 and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counter-claim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.    DIP Liens.

(a)    As security for the DIP Obligations, immediately upon, and effective as of, entry of the Interim Order, the DIP Collateral Agent, for the benefit of itself and each of the other DIP Secured Parties, was granted (and such grant is hereby ratified and approved on a final basis) continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens on (collectively, the "DIP Liens") all DIP Collateral as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of all of the DIP Obligations.

(b)    The term "DIP Collateral" means all assets and properties (whether tangible, intangible, real, personal or mixed) of the Debtors, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors (including under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located, including, without limitation, all of the Debtors' rights, title and interest in:  (i) all Prepetition Collateral; (ii) all cash and cash equivalents; (iii) all funds in any deposit account, securities account or other account of the Debtors and all money, cash, cash equivalents, instruments and other property deposited therein or credited thereto from time to time; (iv) all accounts and other receivables; (v) all contract rights; (vi) all instruments,

17

documents and chattel paper; (vii) all securities (whether or not marketable); (viii) all goods, as-extracted collateral, furniture, equipment, inventory and fixtures; (ix) all real property interests; (x) all interests in leaseholds, (xi) all franchise rights; (xii) all patents, tradenames, trademarks (other than intent-to-use trademarks), copyrights, licenses and all other intellectual property; (xiii) all general intangibles, tax or other refunds, or insurance proceeds; (xiv) all equity interests, capital stock, limited liability company interests, partnership interests and financial assets; (xv) all investment property; (xvi) all supporting obligations; (xvii) all letters of credit issued to the Loan Parties and letter of credit rights; (xviii) all commercial tort claims; (xix) all other claims and causes of action and the proceeds thereof (including all proceeds of claims and causes of action arising under chapter 5 of the Bankruptcy Code (collectively, "Avoidance Actions")); (xx) all books and records (including, without limitation, customers lists, credit files, computer programs, printouts and other computer materials and records); (xxi) to the extent not covered by the foregoing, all other assets or properties of the Debtors, whether tangible, intangible, real, personal or mixed; and (xxii) all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, including any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing; provided, however, that: (1) the DIP Collateral shall not include Excluded Assets (as defined in the DIP Credit Agreement); (2) the DIP Collateral shall include all proceeds and products of Excluded Assets; and (3) with respect to the Debtors' non-residential real property leases, no liens or encumbrances shall be granted or extended to such leases themselves under this Final Order, except as permitted in the applicable lease or pursuant to applicable law, but rather any liens granted shall extend only to the proceeds realized upon the sale, assignment, termination or other

disposition of such leases, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds.

(c)     To the fullest extent permitted by the Bankruptcy Code or applicable law, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, shall have no force or effect with respect to the DIP Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Final Order or in favor of the Prepetition Secured Parties in accordance with this Final Order.  For the avoidance of doubt, nothing in this Final Order is creating any tax exemption pursuant to section 1146(a) of the Bankruptcy Code.

6.     <u>Priority of DIP Liens</u>.

(a)     The DIP Liens shall have the following priorities:

(i)     pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Liens shall be valid, enforceable, non-avoidable and automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to Permitted Prior Senior Liens, subject only to (x) the Carve-Out and (y) Liens on cash deposits made by the Debtors to secure letter of credit Indebtedness (as defined in the DIP Credit Agreement) incurred by the Debtors, to the extent such Indebtedness does not exceed $5,000,000 and is otherwise permitted under <u>Section 6.01(p) of the DIP Credit Agreement</u>;

(ii)     pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Liens shall be valid, enforceable, non-avoidable and automatically and fully perfected junior liens on and security interests in all DIP Collateral other than Prepetition Collateral that on or as of the Petition Date is subject to Permitted Prior Senior Liens, subject only to the Carve-Out and such Permitted Prior Senior Liens; and

(iii)     pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Liens shall be valid, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens on and security interests in all DIP Collateral that also constitutes Prepetition Collateral, wherever located, which senior priming liens and security interests in favor of the DIP Agent shall prime and be senior to the Prepetition Liens, and shall be subject only to the Carve-Out and Permitted Prior Senior Liens.

(b)     Except as expressly set forth herein, the DIP Liens and the Superpriority DIP Claims: (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

7.     <u>Superpriority DIP Claims</u>.  Subject only to the Carve-Out, immediately upon, and effective as of, entry of the Interim Order, the DIP Secured Parties were granted (and such grant is hereby ratified and approved on a final basis), pursuant to section 364(c)(1) of the Bankruptcy

Case 20-11648-JTD    Doc 159    Filed 07/15/20    Page 21 of 59

Code, allowed superpriority administrative expense claims in each of the Chapter 11 Cases or any Successor Cases (the "Superpriority DIP Claims"), on account of the DIP Obligations, (a) with priority over any and all administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses, unsecured claims, or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, and (b) which shall at all times be senior to the rights of the Debtors or their estates, and any trustee appointed in the Chapter 11 Cases or any Successor Cases to the extent permitted by law.  The Superpriority DIP Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral.

8.    Use of DIP Facility Proceeds.  From and after the Closing Date, the Debtors  shall be permitted to draw upon the DIP Facility and use the proceeds of the DIP Facility and Cash Collateral only for the following purposes, in each case, solely in accordance with and subject to this Final Order, the DIP Loan Documents and the Approved Budget: (a) the general corporate and working capital purposes of the Debtors; (b) the payment of interest, fees, costs and expenses related to the DIP Facility (including the fees and expenses of DIP Secured Party Advisors (defined below); (c) to make all permitted payments of costs of administration of the

Chapter 11 Cases; (d) to satisfy any adequate protection obligations owing under the Interim Order or this Final Order; (e) to make any other payments permitted by the Approved Budget (including the payment of interest, fees, costs and expenses of professionals retained by the Debtors and the Official Committee); and (f) at the Debtors' option, to cash collateralize Indebtedness permitted to be incurred under letters of credit pursuant to Section 6.01(p) of the DIP Credit Agreement (any such cash collateral, "LC Cash Collateral"); provided, further that, notwithstanding anything to the contrary contained in this Final Order or the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any Prepetition Liens in any LC Cash Collateral shall be subordinate to the Lien of the issuer of the applicable cash collateralized letter of credit permitted under Section 6.01(p) of the DIP Credit Agreement in such LC Cash Collateral, to the extent that such Lien is permitted under Section 6.02(s) of the DIP Credit Agreement.

9.      Authorization to Use Cash Collateral.  The Debtors were, by the Interim Order, and hereby are, on a final basis, authorized to use Cash Collateral in accordance with the Approved Budget and subject to the terms and conditions of the DIP Loan Documents, the Interim Order and this Final Order.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any of the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order and the DIP Loan Documents and in accordance with the Approved Budget.  The Prepetition Liens in the Prepetition Collateral shall continue to attach to the Cash Collateral irrespective of the commingling of the Cash Collateral with other cash of the Debtors (if any).  Any failure by the Debtors on or after the Petition Date to comply with the segregation requirements of section 363(c)(4) of the Bankruptcy Code in respect of any Cash Collateral shall

not be used as a basis to challenge the Prepetition Obligations, or the extent, validity, enforceability or perfected status of the Prepetition Liens.  The Debtors were, by the Interim Order, and hereby are, on a final basis, authorized, at their option, to cash collateralize up to $5,000,000 of Indebtedness permitted to be incurred under letters of credit pursuant to Section 6.01(p) of the DIP Credit Agreement.

10.    Adequate Protection.  In consideration for the Debtors' use of the Prepetition Collateral (including Cash Collateral), and to protect the Prepetition Secured Parties against the Diminution in Value of their interests in the Prepetition Collateral, the Prepetition Secured Parties shall receive, solely to the extent of any such Diminution in Value, the following adequate protection:

(a)    *Senior Lender Adequate Protection Liens*.  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Senior Agent and the Senior Lenders, effective as of the entry of the Interim Order, were granted (and such grant is hereby ratified and approved on a final basis) continuing, valid, binding, enforceable and automatically perfected postpetition security interests and liens on all DIP Collateral (the "Senior Lender Adequate Protection Liens"), which security interests and liens will be junior only to the DIP Liens and the Carve-Out, and shall be senior in priority to all other liens, including the Junior Lender Adequate Protection Liens (as defined below) and the Prepetition Liens.  Except for the DIP Liens and the Carve-Out, the Senior Lender Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition Senior

Lien Obligations owed under the Senior Lien Loan Documents are paid in full.  The Senior Lender Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Senior Lender Adequate Protection Liens.

(b)     *Junior Lender Adequate Protection Liens*.  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Junior Agent and the Junior Lenders, effective as of the entry of the Interim Order, were granted (and such grant is hereby ratified and approved on a final basis) continuing, valid, binding, enforceable and automatically perfected postpetition security interests and liens on all DIP Collateral (the "Junior Lender Adequate Protection Liens", and together with the Senior Lender Adequate Protection Liens, the "Adequate Protection Liens"), which security interests and liens will be junior only to the DIP Liens, the Senior Lender Adequate Protection Liens, the Prepetition Senior Liens, and the Carve-Out, and shall be senior in priority to all other liens, including the Junior Prepetition Liens.  Except for the DIP Liens, the Senior Lender Adequate Protection Liens and the Carve-Out, the Junior Lender Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition Junior Lien Obligations owed under the Junior Lien Loan Documents are paid in full.  The Junior Lender Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and

preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Junior Lender Adequate Protection Liens.

(c)     *Senior Lender Superpriority Claim.*  Pursuant to sections 361 and 507(b) of the Bankruptcy Code, the Senior Agent and the Senior Lenders, effective as of the entry of the Interim Order, were granted (and such grant is hereby ratified and approved on a final basis) an allowed superpriority administrative expense claim (the "Senior Lender Superpriority Claim"), which claim shall be junior to the Superiority DIP Claims and the Carve-Out, but shall be senior to and have priority over any other administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.  The Senior Lender Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral.  Except for the Superiority DIP Claims and the Carve-Out, the Senior Lender Superpriority Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the

Prepetition Senior Lien Obligations owed under the Senior Lien Loan Documents are paid in full.

(d)     *Junior Lender Superpriority Claim*.  Pursuant to sections 361 and 507(b) of the Bankruptcy Code, the Junior Agent and the Junior Lenders, effective as of the entry of the Interim Order, were granted (and such grant is hereby ratified and approved on a final basis) an allowed superpriority administrative expense claim (the "Junior Lender Superpriority Claim", and together with the Senior Lender Superpriority Claim, the "Prepetition Lender Superpriority Claims"), which claim shall be junior to the  Superiority DIP Claims, the Senior Lender Superpriority Claim and the Carve-Out, but shall be senior to and have priority over any other administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.  The Junior Lender Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral.  Except for the Superiority DIP Claims, the Senior Lender Superpriority Claim and the Carve-Out, the Junior Lender Superpriority Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against

26

the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Prepetition Junior Lien Obligations owed under the Junior Lien Loan Documents are paid in full.

11.    <u>Additional Adequate Protection</u>.   As further adequate protection for the Prepetition Secured Parties:

(a)    the Debtors shall (i) on the Closing Date, pay to the Senior Agent, for the benefit of the Senior Lenders in full in cash, all accrued and unpaid interest as of the Petition Date at the applicable rate under the Prepetition Senior Lien Facility and (ii) on a monthly basis, pay to the Senior Agent, for the benefit of the Senior Lenders, cash interest from and after the Petition Date at the non-default rate set forth in the Prepetition Senior Lien Credit Agreement; <u>provided</u> that, for the avoidance of doubt, the payment of interest at the non-default rate shall be without prejudice to the inclusion of default interest in the allowed claim amount for holders of the Prepetition Senior Lien Obligations; <u>provided</u> <u>further</u> that, any adequate protection payment pursuant to this paragraph 11(a) shall be without prejudice to the rights of the Official Committee or any other party in interest as to whether any such payments should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments of principal under the Prepetition Credit Agreements or to ask the Court for other relief.

(b)    the Debtors shall pay all prepetition and postpetition reasonable and documented fees, costs and expenses incurred by (i) the Senior Agent (including all reasonable and documented expenses of counsel to the Senior Agent, including Kilpatrick Townsend & Stockton LLP ("<u>Kilpatrick</u>") and Richards Layton & Finger, PA ("<u>RLF</u>") (the "<u>Senior Agent</u> <u>Professionals</u>"); (ii) the Junior Agent (including all reasonable and documented fees and expenses of counsel to the Junior Agent, including Kilpatrick and RLF) (the "<u>Junior Agent</u>

Professionals"), and (iii) the Ad Hoc Committee and the fees, costs and expenses of their legal and financial advisors (including: (A) Stroock & Stroock & Lavan LLP ("Stroock"); (B) Young Conaway Stargatt & Taylor, LLP ("Young Conaway"); (C) FTI Consulting, Inc. ("FTI"); (D) Moelis & Company ("Moelis"); and (E) such other consultants or other professionals as may be retained by the Ad Hoc Committee with the consent of the Debtors, such consent not to be unreasonably withheld, delayed, or conditioned), in each case, without duplication of the DIP Lenders' advisor fees as provided in paragraph 25 of this Final Order (collectively, the "Ad Hoc Committee Professionals", and together with the Senior Agent Professionals and the Junior Agent Professionals, the "Lender Professionals"); provided that, any adequate protection payment pursuant to this paragraph 11(b) shall be without prejudice to the rights of the Official Committee or any other party in interest as to whether any such payments should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments of principal under the Prepetition Credit Agreements or to ask the Court for other relief.  The invoices for the fees and expenses of the Lender Professionals to be paid pursuant to paragraph 11(a) and (b) hereof shall not be required to comply with the U.S. Trustee guidelines, may be in summary form only (and may contain redactions of privileged, confidential or otherwise sensitive information), and shall be provided to counsel to the Debtors, with a copy to the U.S. Trustee and counsel to the Official Committee (collectively, the "Fee Notice Parties").  If no objection to payment of the requested fees and expenses are made, in writing and delivered to the applicable Lender Professionals and counsel to the Debtors (which delivery may be made via electronic mail) by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "Fee Objection Period"), then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors.

If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.  Notwithstanding the foregoing, the Debtors were authorized and directed by the Interim Order (and such authorization is hereby ratified and approved on a final basis) to pay on the Closing Date the fees and expenses of the Lender Professionals incurred on or prior to such date without the need to provide notice to any other party or otherwise comply with the procedures of this paragraph 11.

(c)    *Budget Compliance*.    The Debtors shall comply with the Approved Budget, subject to the Permitted Variances (as defined in the DIP Credit Agreement) and all budget requirements set forth herein and in the DIP Loan Documents.

(d)    *Information; Access to Books and Records*.    The Debtors will provide to the Prepetition Agents, such reports and information required to be delivered pursuant to the DIP Credit Agreement, and such other reports and information as may be reasonably requested by the Prepetition Agents.  In addition, without limiting the rights of access and information afforded the Prepetition Agents, the Prepetition Lenders, the DIP Agent and the DIP Lenders under this Final Order and/or the DIP Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Ad Hoc Committee reasonable access to the Debtors' premises and their books and records and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers, and consultants

to cooperate, consult with, and provide to the DIP Agent, the DIP Lenders, the Prepetition Agents and the Ad Hoc Committee all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors. The Debtors shall also provide to the Official Committee and its professionals (subject to the execution of appropriate confidentiality agreements) such reports and information required to be delivered by the Debtors to the DIP Lenders pursuant to the DIP Credit Agreement.

12.     <u>Adequate Protection Reservation</u>.  This Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection; <u>provided</u> that any such additional or alternative adequate protection approved by the Court shall at all times be subordinate and junior to the DIP Obligations and the DIP Liens granted under this Final Order and the DIP Loan Documents. Without limiting the foregoing, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate for any Diminution in Value during any of the Chapter 11 Cases subject to the Carve-Out.

13.     <u>Amendments</u>.  The Debtors, the DIP Agent and the DIP Lenders are authorized to implement, in accordance with the terms of the DIP Loan Documents, one or more amendments, waivers, consents or other modifications to and under the DIP Loan Documents, in each case in such form as the Debtors and the Required DIP Lenders may agree, and no further approval of the Bankruptcy Court shall be required for non-material amendments, waivers, consents or other modifications to and under the DIP Loan Documents (and any reasonable fees paid in connection therewith); <u>provided</u>, <u>however</u>, that the Debtors shall provide notice of any material amendment, waiver, consent or other modification under the DIP Loan Documents to counsel to the Official

Committee and the United States Trustee three (3) business days prior to the effective date thereof to the extent practicable; _provided_, _however_, that any amendment, modification or supplement to the DIP Loan Documents for the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the DIP Facility among the DIP Lenders in connection with any syndication of the DIP Facility shall not require notice to any person or entity or further order of the Court.  If no objections are timely received (or if the Debtors, the U.S. Trustee or the Official Committee indicate via electronic mail or otherwise that they have no objection) to a material amendment within three (3) business days from the date of delivery of such notice, the Debtors may proceed to execute such amendment, which shall become effective immediately upon execution.

14.     Budget Covenants.

(a)     _Initial Budget and Updated Budget._  The Debtors have prepared and delivered to the DIP Agent and the Initial DIP Lenders, and the Initial DIP Lenders have approved, an initial budget, a copy of which is attached to the DIP Credit Agreement (the "Initial Budget"), which reflects the Debtors' anticipated cash receipts and all anticipated necessary and required disbursements for each calendar week during the period from the Petition Date through and including the end of the eighteenth (18th) calendar week following the Petition Date.  The Initial Budget (and each Updated Budget (as defined below) approved by the DIP Agent and the Required DIP Lenders) shall be deemed the "Approved Budget" for all purposes hereof until superseded by another Approved Budget pursuant to the provisions set forth below.

(b)     _Updated Budget._  The Debtors shall prepare in good faith and deliver to the DIP Agent and the professionals for the Initial DIP Lenders updated cash flow forecasts consistent with the form and level of detail of the Initial Budget and otherwise in form and

substance acceptable to the Required DIP Lenders, as and to the extent required by, and at such times, and for the periods required under, the DIP Credit Agreement (each such updated forecast, an "Updated Budget").  Each budget delivered to the DIP Agent and the DIP Lenders shall be accompanied by such supporting documentation as reasonably requested by the DIP Agent, the Required DIP Lenders and/or the Lender Professionals, and shall be prepared in good faith, with due care and based upon assumptions the Debtors believe to be reasonable.  For the avoidance of doubt, no amendment, modification or update to an Approved Budget shall be effective without the approval of the Required DIP Lenders.

(c)     *Variance Reporting*.  The Debtors are subject to the variance reporting and testing as set forth in, and in accordance with the terms of, the DIP Credit Agreement.  Variances in excess of Permitted Variances, if any, from the Approved Budget, and any proposed changes to the Approved Budget, shall be subject to written agreement by the Debtors and the Required DIP Lenders, in each case without further notice, motion or application to, order of, or hearing before, the Court.

15.     Modification of Automatic Stay.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit:  (a) the Debtors to grant the DIP Liens and the Superpriority DIP Claim, and to perform such acts as the DIP Agent or the Required DIP Lenders may request to assure the perfection and priority of the DIP Liens; (b) the Debtors to take all appropriate action to grant the Adequate Protection Liens and the Prepetition Lender Superpriority Claims set forth herein, and to take all appropriate action to ensure that the Adequate Protection Liens granted hereunder are perfected and maintain the priority set forth herein; (c) the Debtors to incur all liabilities and obligations, including all the DIP Obligations, to the Prepetition Secured Parties and the DIP Secured Parties as contemplated under the Interim

Order, this Final Order and the DIP Loan Documents; (d) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents, the DIP Commitment Letter, the Interim Order and this Final Order; (e) the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents, the Interim Order and this Final Order; (f) subject to paragraph 22 hereof, the DIP Agent and the DIP Lenders to exercise, upon the occurrence and during the continuance of any Event of Default (as defined in the DIP Credit Agreement) under the DIP Loan Documents, all rights and remedies provided for in the DIP Loan Documents and take any or all actions provided therein; (g) the Debtors to perform under the DIP Loan Documents any and all other instruments, certificates, agreements and documents which may be required, necessary or prudent for the performance by the applicable Debtors under the DIP Loan Documents and any transactions contemplated therein or in this Final Order; and (h) the implementation of all of the terms, rights, benefits, privileges, remedies and provisions of this Final Order and the DIP Loan Documents, in each case, without further notice, motion or application to, or order of, or hearing before, this Court, subject to the terms of this Final Order including as to the Remedies Notice Period (as defined below).

16.    <u>Perfection of DIP Liens and Postpetition Liens</u>.    This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of all security interests and liens granted herein, including, without limitation, the DIP Liens and the Adequate Protection Liens, without the necessity of executing, filing or recording any financing statement, mortgage, notice or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance

with applicable law) such liens, or to entitle the Prepetition Agents, the Prepetition Lenders, the DIP Agent or the DIP Lenders to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Agents, without any further consent of any party, was, by the Interim Order, and hereby is authorized, on a final basis, to execute, file or record, and the DIP Agent or Prepetition Agents, as applicable, may require the execution, filing or recording, as each, in its sole discretion deems necessary, of such financing statements, mortgages, notices of lien, and other similar documents to enable the DIP Agent and the Prepetition Agents, as applicable, to further validate, perfect, preserve and enforce the DIP Liens or other liens and security interests granted hereunder, perfect in accordance with applicable law or to otherwise evidence the DIP Liens and/or the Adequate Protection Liens, as applicable, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been executed, filed or recorded as of the Petition Date; provided, however, that no such execution, filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens. The Debtors were, by the Interim Order, and hereby are, on a final basis, authorized and directed to execute and deliver promptly upon demand to the DIP Agent, the Required DIP Lenders or the Prepetition Agents, as applicable, all such financing statements, notices, and other documents as the DIP Agent, the Required DIP Lenders or the Prepetition Agents, as applicable, may reasonably request. The DIP Agent, the Required DIP Lenders or the Prepetition Agents, each in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instruments, and in such event, the filing or recording office shall be authorized to file or record such photocopy of this Final Order.

17.    <u>Protection of DIP Lenders' Rights and Adequate Protection Liens</u>.  So long as there are any DIP Obligations outstanding, the Prepetition Secured Parties shall (a) absent the written consent of the Required DIP Lenders, have no right to, and take no action to, foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Loan Documents, the Interim Order or this Final Order or otherwise seek or exercise any enforcement rights or remedies against any DIP Collateral or in connection with the debt and obligations underlying the Prepetition Loan Documents or Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as defined in the Prepetition Loan Documents), (b) be deemed to have consented to any release of DIP Collateral authorized under the DIP Loan Documents, (c) not file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, memoranda of lease, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (c), the DIP Collateral Agent files financing statements or other documents to perfect the liens granted pursuant to the DIP Loan Documents, the Interim Order and/or this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the date of filing, and (d) deliver or cause to be delivered, at the Debtors' costs and expense (for which the Prepetition Lenders shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases and/or assignments (to the extent provided for herein) in favor of the DIP Agent and the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of Adequate Protection Liens and the Prepetition Liens on any portion of the DIP Collateral subject to any sale or disposition approved

or arranged for by the Required DIP Lenders or the DIP Agent (upon direction from the Required DIP Lenders).

18.   <u>Proceeds of Subsequent Financing</u>.   Without limiting the provisions of the immediately preceding paragraph, if the Debtors, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents at any time prior to the indefeasible payment in full in cash of all of the Prepetition Obligations and the indefeasible payment in full in cash of all of the DIP Obligations, the satisfaction of the Superpriority DIP Claims and the Adequate Protection Claims, and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility and this Final Order, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, then unless otherwise agreed by the Required DIP Lenders, (i) all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied to the DIP Obligations pursuant to the DIP Credit Agreement, (ii) after payment in full of all DIP Obligations, all the cash proceeds derived from such credit or debt shall immediately be turned over to the Senior Agent to be applied to the Prepetition Senior Lien Obligations and (iii) after payment in full of all Prepetition Senior Lien Obligations, all the cash proceeds derived from such credit or debt shall immediately be turned over to the Junior Agent to be applied to the Prepetition Junior Lien Obligations.

19.   <u>Maintenance of DIP Collateral</u>.   The Debtors shall continue to maintain all property, operational and other insurance as required and as specified in the DIP Loan Documents.   Upon entry of the Interim Order and to the fullest extent provided by applicable

law, the DIP Agent (on behalf of the DIP Secured Parties) was, and was deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.  The Debtors shall also maintain the cash management system in effect as of the Petition Date, as modified by this Final Order and any order of the Court authorizing the continued use of the cash management system that is acceptable to the Required DIP Lenders or the DIP Agent (as directed by the Required DIP Lenders) or as otherwise required by the DIP Loan Documents.  The Debtors shall not open any new deposit or securities account that is not subject to the security interests of each of the Prepetition Secured Parties and the DIP Secured Parties.

20.    <u>Utility Deposits</u>.  In accordance with the *Final Order (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (II) Deeming Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Adequate Assurance of Payment* (the "<u>Final Utilities Order</u>"), the DIP Liens shall be subject to the rights of the Utility Providers (as defined in the Final Utilities Order) in the Adequate Assurance Account and Adequate Assurance Deposit (each as defined in the Interim Utilities Order) until the Adequate Assurance Deposit is returned to the Debtors or otherwise ordered by the Court.

21.    <u>DIP Termination Date</u>.  Each of the following shall constitute a termination event under this Final Order (each a "<u>Termination Event</u>", and the date upon which such Termination Event occurs, the "<u>DIP Termination Date</u>"), unless waived in writing by the Required DIP Lenders: (a) the occurrence of the maturity date of the DIP Facility; (b) occurrence of an "Event of Default" under and as defined in the DIP Credit Agreement; (c) the consummation of a sale of substantially all of the Debtors' assets; (d) the effective date of a chapter 11 plan;  or (e) the

failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Final Order.

22.    <u>Rights and Remedies Upon Termination Event</u>.  Immediately upon the occurrence and during the continuation of a Termination Event, the DIP Agent (upon direction from the Required DIP Lenders) or the Required DIP Lenders may (and any automatic stay otherwise applicable to the DIP Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, is hereby modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Secured Parties to), upon delivery of prior written notice (including by e-mail) to counsel to the Debtors, counsel for the Official Committee, and the United States Trustee: (a) immediately terminate and/or revoke the Debtors' right under this Final Order and any other DIP Loan Documents to use any Cash Collateral; (b) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (c) declare all DIP Obligations to be immediately due and payable; (d) invoke the right to charge interest at the default rate under the DIP Loan Documents; (e) freeze monies or balances in the Debtors' accounts; (f) immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Agent or the DIP Lenders against the DIP Obligations; (g) enforce any and all rights against the DIP Collateral, including, without limitation, foreclosure on all or any portion of the DIP Collateral, collection of accounts receivable, occupying the Debtors' premises, sale or disposition of the DIP Collateral; and (h) take any other actions or exercise any other rights or remedies permitted under this Final Order, the DIP Loan Documents or applicable law; <u>provided</u>, <u>however</u>, that prior to the exercise of any right or remedy in <u>clauses (e)</u> through <u>(h)</u> of this paragraph, the DIP Agent (upon direction from

the Required DIP Lenders) or the Required DIP Lenders, as applicable, shall be required to provide five (5) business days' written notice to counsel to the Debtors, counsel to the Official Committee and the U.S. Trustee of the intent of the DIP Agent (upon direction from the Required DIP Lenders) or intent of the Required DIP Lenders to exercise its rights and remedies (the "Remedies Notice Period").   During such Remedies Notice Period, the Debtors and the Official Committee shall be entitled to an emergency hearing before the Court.   Unless the Court orders during the Remedies Notice Period that a Termination Event has not occurred, the DIP Agent and the DIP Lenders shall be deemed to have received relief from the automatic stay and the DIP Agent (upon direction from the Required DIP Lenders) and/or the Required DIP Lenders may exercise all rights and remedies set forth in this Final Order, the DIP Loan Documents and as otherwise available at law or equity without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code or otherwise.   The rights and remedies of the DIP Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Secured Parties have under the DIP Loan Documents or otherwise.   The Debtors shall cooperate with the DIP Secured Parties in their exercise of rights and remedies, whether against the DIP Collateral or otherwise.   During the Remedies Notice Period, the Debtors may use Cash Collateral only to pay the following amounts and expenses solely in accordance with the respective Approved Budget line items:  (i) expenses that the Debtors and Required DIP Lenders have determined in good faith are in the ordinary course and critical to the preservation of the Debtors and their estates and (ii) such other amounts as have been approved in advance in writing by the Required DIP Lenders.  Notwithstanding the foregoing, nothing herein shall preclude the DIP Agent (upon direction from the Required DIP Lenders) and/or the Required DIP Lenders from seeking an

order from the Court authorizing the Required DIP Lenders to exercise any enforcement rights or remedies with respect to the DIP Collateral on less than five (5) business days' notice.

23.    <u>Landlord Agreements; Access</u>.  Without limiting any other rights or remedies of the DIP Agent or the other DIP Secured Parties, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) business days' prior written notice to counsel to the Debtors and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, that a Termination Event has occurred and is continuing, subject to applicable non-bankruptcy law, the DIP Agent (upon direction from the Required DIP Lenders), (i) may, unless otherwise expressly provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent or Prepetition Agent, as applicable (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph 23 without interference from lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law; <u>provided</u>, <u>however</u>, that the DIP Agent (on behalf of the DIP Secured Parties and upon direction from the Required DIP Lenders) shall, unless otherwise approved by Required DIP Lenders, pay only rent and additional rent, fees, royalties, or other monetary obligations of the Debtors that first arise after the written notice referenced above from the DIP Agent and that accrue during the period of such occupancy or use by DIP Agent

calculated on a per diem basis.  Nothing herein shall require the Debtors, the DIP Agent or the other DIP Secured Parties, to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agent and the other DIP Secured Parties in this paragraph 23.  Any title, landlord's lien, right of distraint or levy, security interest or other interest that any landlord or mortgagee may have in any DIP Collateral or Prepetition Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby expressly subordinated to the DIP Liens.

24.     <u>Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>.  The DIP Secured Parties have acted in good faith in connection with the DIP Facility, the DIP Loan Documents, the Interim Order, and with this Final Order, and their reliance on the Interim Order and this Final Order is in good faith.  Based on the findings set forth in the Interim Order and this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of the Interim Order or this Final Order are hereafter reversed or modified on appeal, the DIP Secured Parties and the Prepetition Secured Parties are entitled to the benefits and protections provided in section 364(e) of the Bankruptcy Code.  Any such reversal or modification shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby.  Any security interests, liens or claims granted to the DIP Secured Parties arising prior to the effective date of any such reversal or modification of the Interim Order or this Final Order shall be governed in all respects by the original provisions of the Interim Order or this Final Order (as the case may be), including entitlement to all rights, remedies, privileges and benefits granted herein.

25.    <u>DIP and Other Expenses</u>.  The Debtors were, by the Interim Order, and hereby are, on a final basis, authorized and directed to pay, in cash and on a current basis, all reasonable and documented fees, costs, disbursements and expenses of the DIP Secured Parties incurred at any time, as provided by the DIP Loan Documents and this Final Order, whether or not the transactions contemplated hereby are consummated, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees and expenses, financial advisory fees and expenses, fees and expenses of other consultants and indemnification and reimbursement of fees and expenses (including, without limitation, the reasonable and documented prepetition and postpetition fees costs and expenses of (A) Stroock, Young Conaway, FTI and Moelis, (B) Kilpatrick and RLF; and (C) any other necessary or appropriate counsel, advisors, professionals or consultants in connection with advising the DIP Secured Parties (collectively the "<u>DIP Secured Party Advisors</u>"). The invoices for such fees and expenses shall not be required to comply with the U.S. Trustee guidelines, may be in summary form only (and may contain redactions of privileged, confidential or otherwise sensitive information), and shall not be subject to application or allowance by the Court.  Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.  The invoices for fees and expenses to be paid pursuant to this paragraph 25 shall be provided to the Fee Notice Parties.  If no objection to payment of the requested fees and expenses are made, in writing and delivered to the applicable DIP Secured Party Advisors and counsel to the Debtors (which delivery may be made via electronic mail) by any of the Fee Notice Parties within the Fee Objection Period, then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors.  If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties

within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.  Notwithstanding the foregoing, the Debtors were authorized and directed by the Interim Order (and such authorization is hereby ratified and approved on a final basis) to pay on the Closing Date the fees and expenses of the DIP Secured Party Advisors incurred on or prior to such date without the need to provide notice to any other party or otherwise comply with the procedures of this paragraph 25.

26.     <u>Indemnification</u>.  The Debtors were, by the Interim Order, and hereby are, on a final basis, authorized to jointly and severally indemnify and hold harmless the DIP Agent (solely in its capacity as a DIP Agent), each DIP Lender (solely in its capacity as a DIP Lender) and each other Indemnified Party (as defined in the DIP Credit Agreement) in accordance and subject to the terms and conditions set forth in the DIP Credit Agreement.

27.     <u>Proofs of Claim</u>.  The DIP Secured Parties and the Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases for any claim against the Debtors.  Any proof of claim filed by the DIP Secured Parties or the Prepetition Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons.  Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases shall not apply to claims of the DIP Secured Parties or the Prepetition Secured Parties.

28.     <u>Carve-Out; Payment of Estate Professionals</u>.

(a)     *Carve-Out*.  For the purposes of this Final Order, the term "<u>Carve-Out</u>" shall mean the following:  (i) all fees required to be paid to the Clerk of the Court and to the

43

Office of the United States Trustee under 28 U.S.C. § 1930(a)(6) plus interest pursuant to 31 U.S.C. § 3717; (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $10,000; (iii) all reasonable fees and expenses incurred by a patient care ombudsman under section 333 of the Bankruptcy Code in an amount not to exceed $30,000 on a monthly basis and $127,500 in the aggregate; (iv) to the extent allowed by the Court at any time, all accrued and unpaid fees and expenses incurred on or prior to the delivery of a Carve-Out Trigger Notice (as defined below) (such date, the "Carve-Out Trigger Date") by professionals or professional firms retained by the Debtors or the Official Committee (the "Estate Professionals"), pursuant to a final order of the Court (which order has not been vacated or stayed) under sections 327, 328, 363 or 1103(a) of the Bankruptcy Code, whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice, up to the amounts set forth in the Approved Budget (in each case, less prepetition retainers received by such Estate Professionals and not applied to the fees, disbursements, costs and expenses set forth in this clause (iv)); provided, however, that if an Estate Professional's actual fees and expenses incurred during any month (A) are less than the amount budgeted for such Estate Professional in the Approved Budget for such month, then the difference between the budgeted amount and the actual amount shall be added to the budgeted amounts for such Estate Professional for the immediately following month for the purposes of calculating the Carve-Out under this clause (iv), and (B) if an Estate Professionals' actual fees and expenses incurred during any month exceed the amount budgeted for such Estate Professional in the Approved Budget, then any such excess amounts shall be included in the Carve-Out pursuant to this clause (iv) if, and to the extent that, the aggregate amount incurred by such Estate Professional pursuant to this clause (iv) does not exceed the aggregate amount budgeted for such Estate Professional for the entire term

shown in the Approved Budget; and (v) all unpaid fees and expenses incurred after the Carve-Out Trigger Date, to the extent allowed by the Court at any time, (A) by professionals retained by the Debtors in an aggregate amount not to exceed $250,000 and (B) by professionals retained by the Official Committee in an aggregate amount not to exceed $25,000 (the amount set forth in this clause (v) being the "Post-Carve-Out Trigger Notice Cap"); provided, however, that nothing herein shall be construed as a consent to the allowance of any Estate Professionals' fees or expenses or impair the ability of any party to object to any fees, expenses, reimbursements or compensation sought by any such Estate Professionals.  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email by the DIP Agent (acting at the direction of the Required DIP Lenders) or the Required DIP Lenders to counsel to the Debtors, the U.S. Trustee, and lead counsel to the Official Committee appointed in these Chapter 11 Cases, which notice may be delivered following the occurrence of a Termination Event and stating that the Post-Carve-Out Trigger Notice Cap has been invoked.  Any payment or reimbursement made on or after the date and time of the Carve-Out Trigger Date to an Estate Professional shall permanently reduce the Carve-Out on a dollar-for-dollar basis with respect to such Estate Professional.  To the extent that any payment to an Estate Professional is subsequently disallowed and/or disgorged, the proceeds of any claim against the Estate Professional for amounts so disallowed or disgorged shall constitute DIP Collateral and as such, shall be subject to DIP Liens and Superpriority DIP Claims hereunder.

(b)    Upon the receipt of the Carve-Out Trigger Notice, the Debtors shall provide immediate notice to all Estate Professionals informing them that such notice was delivered and further advising them that the Debtors' ability to pay such Estate Professionals is subject to and limited by the Carve-Out.

(c)     None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Estate Professional incurred in connection with the Chapter 11 Cases under any chapter of the Bankruptcy Code.

29.     <u>Limitations on the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve-Out</u>.  No DIP Collateral, Prepetition Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve-Out or any other amounts may be used, directly or indirectly, by any of the Debtors, the Official Committee or any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith):  (a) to object to, prevent, hinder, or delay the DIP Agent's, the DIP Lenders', the Prepetition Agents' or the Prepetition Lenders' enforcement or realization upon any of the DIP Collateral, Prepetition Collateral or Cash Collateral, once a Termination Event occurs (other than with respect to rights otherwise granted herein with respect to the Remedies Notice Period); (b) to use or seek to use Cash Collateral other than as provided pursuant to the Interim Order or this Final Order or, except to the extent expressly permitted by the terms of the DIP Loan Documents, selling or otherwise disposing of DIP Collateral, in each case, without the consent of the Required DIP Lenders; (c) to seek authorization to obtain liens or security interests that are senior to, or on a parity with, the DIP Liens or the Superpriority DIP Claims; or (d) to investigate (including by way of examinations or discovery proceedings), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity,

against any of the Prepetition Lender Parties with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (A) any claims or causes of action arising under chapter 5 of the Bankruptcy Code, (B) any so-called "lender liability" claims and causes of action, (C) any action with respect to the amount, validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the Superpriority DIP Claims, the DIP Liens, the DIP Loan Documents, the Senior Lien Loan Documents, the Prepetition Senior Lien Obligations, the Junior Lien Loan Documents or the Prepetition Junior Lien Obligations, (D) any action seeking to challenge, invalidate, modify, set aside, avoid, marshal, recharacterize or subordinate, in whole or in part, the DIP Obligations, the DIP Liens, the Superpriority DIP Claims, the DIP Collateral, the Prepetition Collateral or the Prepetition Obligations, (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either the DIP Agent or the DIP Lenders hereunder or under any of the DIP Loan Documents, either the Prepetition Agents or the Prepetition Lenders under any of the Prepetition Loan Documents (in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Agent's or the DIP Lenders' assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents, the Interim Order and this Final Order (as applicable)), (F) objecting to, contesting, or interfering with, in any way, the DIP Agent's and the DIP Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default (as defined in the DIP Credit Agreement) has occurred; provided, however, that no more than $50,000 in the aggregate of the DIP Collateral, the Carve-Out, proceeds from the borrowings under the DIP Facility or any other amounts, may be used by the Official Committee

to investigate claims and/or liens of the Senior Agent and the Senior Lenders under the Senior Lien Loan Documents and the Junior Agent and the Junior Lenders under the Junior Lien Loan Documents.

30.    Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)    Each stipulation, admission, and agreement contained in this Final Order including, without limitation, the Debtors' stipulations in paragraph E hereof (collectively, the "Stipulations"), shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.

(b)    The Stipulations shall be binding upon all other parties in interest (including, without limitation, the Official Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, in all circumstances and for all purposes, unless (1) the Official Committee or a party in interest (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the expiration of the Challenge Period (as defined below)), has timely and duly filed an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "Challenge Proceeding") by the expiration of the Challenge Period (as defined below), objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents, or otherwise asserting or prosecuting any avoidance action or any other claim, counterclaim, cause of action, objection, contest or defense (a "Challenge") against any of the Prepetition Secured Parties or any of their respective affiliates, subsidiaries,

48

officers, directors, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and the respective successors and assigns thereof (in each case, in their respective capacities as such), arising under, in connection with or related to the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents, and (2) there is entered a final non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding (in which circumstance the benefit of such final non-appealable order shall inure to the benefit of all parties in interest); provided, however, that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such Challenge (and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred).

(c)     Only those parties in interest who properly commence a Challenge within the Challenge Period may prosecute such Challenge.  As to (x) any parties in interest, including the Official Committee, who fail to file a Challenge prior to the expiration of the Challenge Period, or if any such Challenge is filed and overruled, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, the Official Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Chapter 11 Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Cases), shall be deemed to be forever waived and barred; (2) all of the findings, Debtors' Stipulations, waivers, releases, affirmations and other Stipulations hereunder as to the priority, extent, allowability, validity and perfection as to the Prepetition Liens, the Prepetition Obligations or the Prepetition Loan Documents shall be of full force and effect and forever binding upon the applicable Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in the Chapter

11 Cases and any Successor Cases; (3) the Debtors' estates, all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases shall be deemed to have released, waived and discharged the Prepetition Secured Parties (whether in their prepetition or postpetition capacity), together with each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Obligations; (4) the Prepetition Obligations shall constitute allowed claims and shall not be subject to any defense, claim, counterclaim, recharacterization, subordination, offset, avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases; (5) the Prepetition Loan Documents shall be deemed to have been valid, as of the Petition Date, and enforceable against each of the Debtors (subject to the Prepetition Intercreditor Agreement) in the Chapter 11 Cases and any Successor Cases; and (6) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense;

(d)     The "Challenge Period" shall mean (i) for the Official Committee, August 31, 2020 and (ii) for any parties in interest other than the Official Committee, September 8, 2020. The Challenge Period may only be extended (a) with the written consent of the applicable Prepetition Agent at the direction of the Required Lenders (as defined in the applicable Prepetition Loan Documents), or (b) by the Court, upon a motion for cause shown, in each case prior to the expiration of the Challenge Period.  A motion filed with the Court seeking standing and authority to pursue a Challenge (a "Standing Motion"), provided that it is timely filed before

the expiration of the Challenge Period, shall toll the Challenge Period only as to the party that timely filed a Standing Motion, and solely with respect to the Challenge identified in the Standing Motion, until such motion is resolved or adjudicated by the Court.

(e)   Notwithstanding anything to the contrary herein: (x) if any Challenge is timely commenced, the Stipulations contained in paragraph E of this Final Order shall nonetheless remain binding and preclusive on all parties-in-interest (other than the party that has brought such Challenge in connection therewith and then only with respect to the Stipulations that are subject to the Challenge and not to any Stipulations not subject to the Challenge) except to the extent that such Stipulations are successfully challenged in such Challenge; and (y) the Prepetition Secured Parties reserve all of their rights to contest on any grounds any Challenge and preserve any and all of their rights to appeal and stay any orders issued in connection with a successful Challenge.  Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including the Official Committee or any other statutory or non-statutory committees appointed in these Chapter 11 Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, and all rights to object to such standing are expressly reserved.

31.   No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary.

32.   Section 506(c).  In partial consideration for, among other things, the Carve Out and the payments made under the Approved Budget to administer the Chapter 11 Cases with the use of Cash Collateral, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the DIP Agent, the

Prepetition Agents, the DIP Lenders or the Prepetition Lenders, any of the DIP Obligations or Prepetition Obligations, or any of the DIP Collateral or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the DIP Secured Parties upon the DIP Collateral or Prepetition Lenders upon the Prepetition Collateral, as applicable, without the prior express written consent of the affected DIP Agent, Prepetition Agent and/or affected DIP Lender or Prepetition Lender, in their sole discretion.  For the avoidance of doubt, consent to the Carve-Out or the approval of any budget hereunder shall not be deemed a consent under this paragraph.

33.    Section 552(b).  The Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) shall not apply to the Prepetition Secured Parties or the Prepetition Obligations.

34.    No Marshaling/Application of Proceeds.  In no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds shall be received and applied in accordance with this Final Order; provided, however, that the DIP Secured Parties and the Prepetition Secured Parties shall first look to DIP Collateral other than (i) Avoidance Actions or (ii) commercial tort claims (the foregoing clauses (i) and (ii) together with proceeds thereof, collectively, the "Last Out DIP Collateral") to satisfy (x) the DIP Obligations or (y) any adequate protection obligations owing under this Final Order, as applicable, before seeking to satisfy such obligations from any Last Out DIP Collateral.

35.    <u>Right to Credit Bid</u>.  Pursuant and subject to section 363(k) of the Bankruptcy Code, each of the DIP Secured Parties (subject to the terms of the DIP Loan Documents), the DIP Agent (at the direction of the Required DIP Lenders), the Prepetition Secured Parties, the Senior Agent (at the direction of the Required Lenders) and the Junior Agent (at the direction of the Required Lenders) shall have the unqualified right to "credit bid" up to the full amount of the DIP Obligations, the Prepetition Senior Lien Obligations or the Prepetition Junior Lien Obligations, respectively, in connection with any sale or other disposition of all or any portion of the DIP Collateral or the Prepetition Collateral, respectively, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

36.    <u>Discharge Waiver/Release</u>.  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Agent (upon direction from the Required DIP Lenders) and the DIP Lenders have otherwise agreed, including as provided in an Acceptable Plan (as defined in the DIP Credit Agreement).  None of the Debtors shall propose or support any plan of reorganization (including a plan that provides for a sale of all or substantially all of the Debtors' assets), or order confirming such plan, that is not conditioned upon the indefeasible payment of the DIP Obligations in full in cash within a commercially reasonable period of time, in no event later than the effective date of such plan of reorganization, without

the written consent of the DIP Agent (upon direction from the Required DIP Lenders) and the Required DIP Lenders.

37.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the DIP Secured Parties or the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the DIP Secured Parties or the Prepetition Secured Parties under the DIP Loan Documents, the applicable Prepetition Loan Documents, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11 Cases to a case under chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party-in-interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Final Order.

38.    <u>No Waiver by Failure to Seek Relief</u>.  The failure, at any time or times hereafter, of the DIP Secured Parties or the Prepetition Secured Parties, to require strict performance by the Debtors of any provision of this Final Order shall not waive, affect or diminish any right of such parties thereafter to demand strict compliance and performance therewith.  No delay on the part of any party in the exercise of any right or remedy under this Final Order shall preclude any

other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under this Final Order shall be deemed to have been amended, modified, suspended or waived unless such amendment, modification, suspension or waiver is in writing and signed by the party against whom such amendment, modification, suspension or waiver is sought.  No consents required hereunder shall be implied by any of the DIP Secured Parties or the Prepetition Secured Parties shall be implied by any inaction or acquiesce by any of the DIP Secured Parties or the Prepetition Secured Parties.

39.    <u>Binding Effect of this Final Order</u>.  Immediately upon, and effective as of, entry by the Court, this Final Order shall inure to the benefit of the Debtors, the DIP Secured Parties and the Prepetition Secured Parties, and it shall become valid and binding upon the Debtors, the DIP Secured Parties and the Prepetition Secured Parties, any and all other creditors of the Debtors, the Official Committee or other committee appointed in the Chapter 11 Cases, any and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of any of the Debtors in any of the Chapter 11 Cases, or upon dismissal of any of the Chapter 11 Cases.  Further, upon entry of this Final Order, the Debtors' Stipulations contained herein shall be binding on the Debtors, and the DIP Obligations shall constitute allowed claims for all purposes in each of the Chapter 11 Cases.

40.    <u>No Modification to Final Order</u>.  Until and unless the DIP Obligations and the Prepetition Obligations evidenced by the Prepetition Loan Documents have been indefeasibly paid in full in cash (or the Required DIP Lenders otherwise agree in writing), the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent (at the direction of the Required DIP Lenders), (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority

claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in the Chapter 11 Cases, equal or superior to the Superpriority DIP Claims, other than the Carve Out; (b) without the prior written consent of the Required DIP Lenders, any order authorizing the use of Cash Collateral resulting from the DIP Collateral or the Prepetition Collateral that is inconsistent with this Final Order; (c) without the prior written consent of the Required DIP Lenders, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Loan Documents or this Final Order; or (d) without the prior written consent of the Requisite Lenders (as defined in each Prepetition Credit Agreement) or the DIP Agent (upon direction from the Required DIP Lenders), any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Junior Facility Liens or the Junior Lender Adequate Protection Liens other than the DIP Obligations or as specifically provided in this Final Order.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the Required DIP Lenders and the Requisite Lenders.

41.   <u>Order Controls</u>.   In the event of any inconsistency between the terms and conditions of the DIP Loan Documents, any other document or any other order of the Court and of this Final Order, the provisions of this Final Order shall govern and control.

42.   <u>Limits on Lender Liability</u>.  Nothing in the Interim Order, this Final Order or in any of the DIP Loan Documents, the Prepetition Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition Secured Parties, solely in their

capacities as such, of any liability for any claims arising from any and all prepetition or postpetition activities by the Debtors in the operation of their businesses in connection with their restructuring efforts.  In addition, subject to paragraph 23 hereof, (a) the DIP Secured Parties and the Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for:  (i) the safekeeping of the DIP Collateral or Prepetition Collateral; (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause; (iii) any diminution in value thereof; or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or any other person and (b) all risk of loss, damage, or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

43.     _Survival_.  The provisions of this Final Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of the Chapter 11 Cases, (b) converting any or all of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of the Chapter 11 Cases, or (d) pursuant to which the Court abstains from hearing any of the Chapter 11 Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Secured Parties and the Prepetition Secured Parties pursuant to this Final Order, notwithstanding the entry of any such order, shall continue in any of the Chapter 11 Cases, following dismissal of any of the Chapter 11 Cases, or any Successor Cases, and shall maintain their priority as provided by this Final Order.  The DIP Protections (defined below), as well as the terms and provisions concerning the indemnification of the DIP Secured Parties and the Prepetition Secured Parties, shall continue in any of the Chapter 11 Cases following dismissal of

any of the Chapter 11 Cases, termination of the provisions of this Final Order, and/or the indefeasible payment in full of the DIP Obligations.

44.     <u>Dismissal</u>.  If any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that (i) subject to the Carve-Out, the rights, privileges, benefits and protections afforded herein and in the DIP Loan Documents, including the DIP Liens, the Superpriority DIP Claims, the Adequate Protection Liens and the Prepetition Lender Superpriority Claims (collectively, the "<u>DIP Protections</u>"), shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations have been paid in full, the Prepetition Lien Obligations have been paid in full (and that all DIP Protections and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and the Adequate Protection Liens.

45.     <u>Entry of this Final Order/Waiver of Applicable Stay</u>.  The Clerk of the Court is hereby directed to forthwith enter this Final Order on the docket of the Court maintained in regard to the Chapter 11 Cases.  This Final Order shall be effective upon its entry and not subject to any stay (all of which are hereby waived), notwithstanding anything to the contrary contained in Bankruptcy Rule 4001(a)(3).

46.     <u>Effect of this Final Order</u>.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

47.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Final Order.

Dated: July 15th, 2020
Wilmington, Delaware

JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE